**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| |
|---|
| **In re**<br><br>**BARRY REYNOLDS and**<br>**DIANE REYNOLDS,**<br><br>                **Debtors** |

**Chapter 7**
**Case No. 08-10775-FJB**

**MEMORANDUM OF DECISION ON**
**DEBTORS' MOTION TO VACATE SETTLEMENT AGREEMENT**

By this motion the Debtors seek to set aside and nullify a settlement agreement that they admit signing and that they admit was negotiated for them by counsel.  The settlement agreement settled two adversary proceedings with the Chapter 7 Trustee, David Madoff.  The Debtors argue that when they signed the settlement agreement they were not exercising their free will because they did so under duress.  On May 10, 2010, I conducted an evidentiary hearing at which the Debtors had an opportunity to present evidence of duress to support their request that the settlement agreement be set aside.  After hearing and for the reasons stated herein, I deny the motion to set aside the settlement agreement.

**FACTS AND PROCEDURAL HISTORY**

Based upon the evidence adduced at the hearing or in uncontested pleadings, I find the following facts:

On February 4, 2008, the Debtors commenced a proceeding under Chapter 13 of the Bankruptcy Code.  On May 13, 2009, the case was converted to a case under Chapter 7 and David Madoff (the "Trustee") was appointed the chapter 7 trustee in the case by the United States Trustee.  On July 17, 2009, the Trustee commenced an adversary proceeding against Leo-Louis, Jr. of The Family Dubois, Individually and as Trustee of the D'Amber Trust, A.P. No. 09-1226 (the "Transfer Litigation") alleging that Debtor Diane Reynolds transferred certain real estate in Lakeville, Massachusetts (the "Property") to Leo-Louis Dubois ("Dubois"), as Trustee of

the D'Amber Trust, and that the transfer should be avoided under either federal or state law as actually or constructively fraudulent.  On August 6, 2009, the Trustee commenced a second adversary proceeding, entitled David B. Madoff, Chapter 7 Trustee v. Barry and Diane Reynolds, A.P. No. 09-1247 (the "Discharge Litigation"), in which he objected to the Debtors' receipt of a discharge under sections 727(a)(2) and 727(a)(4) of the Bankruptcy Code.

Prior to the petition date, on February 23, 2006, the Debtors entered a loan agreement with the Bank of Canton.  The Debtors executed a promissory note in the amount of $408,000 (the "Note") and a mortgage (the "Mortgage") on the Property.  Bank of Canton recorded the Mortgage in the appropriate Registry of Deeds on February 26, 2006 and it later filed a proof of claim in the bankruptcy proceeding.

On November 16, 2009, Peter M. Daigle, acting as counsel to the Debtors in the adversary proceedings, contacted the Trustee to open settlement discussions.  The Debtors retained Daigle for the purpose of settling the two adversary proceedings.  Dubois retained another attorney, a Mr. Doherty, to represent him in connection with the settlement discussions. After a period of discussion, the Trustee prepared a proposed settlement agreement and sent it to Daigle and Doherty for review and comment.  After some negotiation, the proposed settlement agreement came to include the following terms (which constitute the essential features of the agreement as it was eventually executed and approved).  First, in the Transfer Litigation, judgment would enter for the Trustee on the constructive fraud count and the Property would be transferred to the estate; all other counts in the Transfer Litigation would be dismissed, including a dismissal of all counts pertaining to Dubois.  Second, the Debtors (i) acknowledged the validity of the Mortgage, (ii) acknowledged that upon his recovery of the Property, the Trustee would attempt to market and sell it, (iii) agreed to provide the Trustee reasonable access to the property for inspection, marketing, and sale purposes and to refrain from interfering with the Trustee's efforts to sell the property, and (vi) agreed to vacate the Property within 180 days of the execution of the settlement agreement.  Finally, the Trustee

2

agreed to dismiss the Discharge Litigation with prejudice, to refrain from marketing the property

for sixty after the execution of the Stipulation, and to permit the Debtors to occupy the property

for 180 days from the execution of the Stipulation.

It appears that the Debtors met, either in person or via telephone conference, several

times with their counsel, as well as with counsel to Dubois, to discuss the proposed settlement

agreement.  All negotiations concerning the settlement agreement between the parties,

however, took place between either the Trustee or his counsel, on the one hand, and counsel to

the Debtors and to Dubois, on the other.  There is no evidence that the Debtors had any direct

communications with the Trustee or his counsel.  Nor is there any evidence that the Trustee or

his counsel ever threatened or even intimated to the Debtors' counsel that the Debtors were

facing any possible criminal liability or exposure as a result of the facts stated in either of the

adversary proceedings, much less that the Trustee would seek to initiate criminal proceedings

against the Debtors.

Diane Reynolds testified at the evidentiary hearing on the motion to vacate settlement

agreement.  Her husband and co-debtor, Barry Reynolds, did not.  Mrs. Reynolds expressly

waived the attorney-client privilege, and her husband did not object to the waiver.  In fact, the

parties stipulated to the entry into the record of a transcript of the deposition of Attorney Peter

Daigle.[1]  The Debtors also waived the privilege at the deposition.

Mrs. Reynolds testified about the meetings that she and her husband had with their

counsel and with counsel to Dubois.  She testified that counsel to Dubois was a criminal

attorney and that he told the Debtors that they may be facing criminal charges if they did not

settle the adversary proceedings.  He, and perhaps their own counsel, told the Debtors that it

would cost between $50,000 and $100,000 to defend the adversary proceedings and that if they

did not settle, the Debtors would soon be deposed.  There is no evidence that the Trustee or his

---

[1]  The deposition was taken on April 29, 2010, in conjunction with the present motion.

counsel ever threatened to instigate criminal proceedings.[2]

The parties to the settlement agreement negotiated several points regarding the agreement. As a result of those negotiations, they made several changes in the proposed agreement. In connection with those negotiations, but never in the presence of the Trustee or his counsel, the Debtors plainly stated that they did not wish to sign the settlement agreement. Mrs. Reynolds even testified that when they met with their counsel at a bookstore in order to sign what was to be the final agreement, they told him that they felt they were signing "under duress." Mrs. Reynolds also testified that there were parts of the agreement that she did not understand at the time she signed it, but she did not elaborate on that theme.[3] In addition, the Debtors introduced into evidence a series of emails between themselves and their counsel, dated from mid-November through mid-December, 2009, in which Mrs. Reynolds articulated an unwillingness to forego in the settlement agreement her right to object to the claims of the Bank and of the Internal Revenue Service.[4]

Notwithstanding their reservations, the Debtors decided to sign the proposed agreement, and, on or about January 26, 2010, they did sign it, as did the Trustee and Dubois. On February 12, 2010, the Trustee then filed the signed agreement, entitled Settlement Stipulation, in the bankruptcy case with a motion for approval thereof; and he served the motion for approval

---

[2]  The Debtors have neither argued nor submitted evidence for the proposition that the Trustee's instigation of criminal proceedings against them would have been inappropriate in the circumstances. The Court need not address the issue.

[3]  The Court does not understand the Debtors to contend that, when they signed the settlement agreement, they did not understand the principal terms of the agreement, as outlined above in this memorandum of decision. Insofar as they may be so contending, they have adduced no credible evidence to support that contention. The Settlement Agreement is a model of clarity. The Debtors had discussed it thoroughly with their counsel. And they themselves concede that they were aware of the distasteful provisions by their testimony that, when they signed, they indicated that they were doing so under duress. They were well aware of the terms they found difficult to accept.

[4]  The Settlement Agreement, as eventually signed by the parties, includes an acknowledgement by the Debtors of the validity and perfection of Bank of Canton's mortgage on the Property but no waiver as to any claim of the Internal Revenue Service.

on (among others) the Debtors themselves and their attorney, Mr. Daigle.  No party objected or

otherwise responded to the motion.  Consequently, on March 9, 2010, the Court entered an

order approving the stipulation; and no appeal was taken from that order.  In accordance with

the approved Settlement Stipulation, the Court, also on March 9, 2010, entered judgment in the

Transfer Litigation, avoiding the transfer of the Property from Diane Reynolds to Dubois, and, on

March 29, 2010,  the Trustee and Debtors filed a stipulation of dismissal with prejudice in the

Discharge Litigation.  By virtue of the dismissal of the Discharge Litigation, the way was cleared

for entry of the Debtors' discharge, and the court therefore entered a discharge order in their

favor on March 31, 2010.

On February 17, 2010, just five days after the Trustee filed the Settlement Stipulation

and motion to approve it and while that motion was still pending, the Trustee filed a second

stipulation, this one between himself and Bank of Canton (the "Bank of Canton Stipulation"),

and a motion to approve it.  These, too, the Trustee served on (among others) the Debtors

themselves and their counsel.  The Bank of Canton Stipulation provides, in relevant part, (i) that

the Bank shall have an allowed, valid, perfected, and enforceable first priority secured claim in a

specified amount; (ii) that upon approval of the Bank of Canton Stipulation, the Trustee would

seek to sell the property, first through a broker by private sale, but if no such sale is

consummated and approved by June 30, 2010, then by public auction; and (iii) that proceeds of

any sale would be distributed as specified, with the estate to recover $35,000 for certain

administrative expenses before any payment to the Bank.  On March 11, 2010, when neither the

Debtors nor anyone else had objected to the motion to approve, the Court entered an order

approving the Bank of Canton Stipulation, and no appeal was taken therefrom.

On April 6, 2010, and at the Debtors' request, Attorney Daigle moved to withdraw as

their counsel in the bankruptcy case.  The Court allowed the motion on April 16, 2010.

5

On April 23, 2010, the Debtors, now acting pro se (as they had through most of the chapter 13 phase of this case and some of the chapter 7 portion), filed the present motion, to which the trustee has objected.  The court scheduled the matter for evidentiary hearing on an expedited basis, conducted the hearing on May 10, 2010, and took the matter under advisement.

**DISCUSSION**

The principal reason that the Debtors argue the settlement agreement should be voided is that they say they were coerced into signing the agreement.  The sources of the coercion, according to the Debtors, are (a) threats that they were facing criminal prosecution and possible incarceration if they did not sign, (b) a concern that the defense of the adversary proceedings would be expensive, (c) a concern that they would be deposed immediately if the matters were not settled, and (d) statements of the Trustee to their counsel, at a point in the negotiations, that the settlement agreement was a "take it or leave it proposition."

The legal issue is whether the Debtors have established that the settlement agreement was procured by economic duress and therefore is invalid.  In Massachusetts,

> [t]o show economic duress (1) a party "must show that he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will."  Williston, Contracts § 1617, at 704 (3d ed. 1970). As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values.  *Ibid.* The elements of economic duress have also been described as follows:  "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.

*Ismert and Associates, Inc. v. New England Mutual Life Ins. Co.*, 801 F.2d 536, 543-44 (1st Cir. 1986) (Breyer, J.) (quoting *International Underwater Contractors, Inc. v. New England Telephone & Telegraph Co.,* 8 Mass. App. Ct. 340, 393 (1979)).  The Supreme Judicial Court of

Massachusetts has defined "duress" in the settlement context to mean "such fear as precludes [the settling party] from exercising free will and judgment." *Ismert* at 548, quoting *Coveney v. President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 22, 445 N.E.2d 136, 140 (1983).

The Debtors have failed to establish economic duress as a defense to the enforcement of the settlement agreement. Most fundamentally, they have not established that the Trustee engaged in any coercive act. There is no evidence that the Trustee ever threatened the Debtors, either directly or through their counsel, with criminal prosecution if they did not settle. The Debtors may well have heard from counsel to Dubois, or even from their own counsel, that they could be prosecuted for bankruptcy crimes, but no such statements were attributed to the Trustee or his counsel. The pressure the Debtors perceived with respect to the expense of mounting a defense to the adversary proceedings was not pressure from the Trustee, but the simple pressure that every litigant feels when having to chose between a compromise and the expense and uncertainty of continued litigation. Certainly that sort of pressure cannot constitute coercion on the part of the counterparty to the settlement, at least not of the sort that might support a defense of duress, or else no settlement agreement would ever stand. Nor can the Debtors' apparent fear of being deposed, which is simply a normal incident of litigation, constitute a wrongful act or statement of the Trustee. Inappropriate discovery demands are another thing, but the Debtors have neither adduced evidence nor even suggested that the Trustee intended or threatened to conduct discovery unnecessarily, to harass or intimidate. The Debtors have not even adduced evidence that the Trustee threatened to depose them. As to the "take it or leave it" ultimatum that the Debtors suggest was duress, I find nothing coercive about that statement. In fact, by its very nature, a "take it or leave it" ultimatum in a settlement negotiation expressly offers the party an alternative—the party can choose to forego the settlement and to litigate the matter.

In addition, the Debtors' contention that they felt overwhelming pressure is simply not credible. Were the Debtors to prevail on the present motion, the settlement and all its consequences would be undone, whereupon, as they surely appreciate, they would find themselves again right back in the situation they earlier experienced as coercively intolerable. Their discharge would be vacated; the Discharge Litigation and the Transfer Litigation would be reinstated; depositions and discovery would be renewed in both; and whatever possibility of criminal prosecution may have previously existed would be reinstated (if indeed it ever went away). But the Debtors have offered no explanation as to why they now suddenly find these tolerable. Nothing has changed. That these circumstances are tolerable now suggests that they were also tolerable then, when the Debtors entered into the Settlement Agreement. I therefore conclude not only that the Trustee is not responsible for any coercion, but also that the Debtors did not even feel themselves coerced. They were not precluded even by the circumstances from exercising their free will and judgment. They did exercise these as they saw fit. And they are now bound by the agreement they freely and deliberately entered. For all these reasons, the Debtors have not proven duress.

In addition to duress, the Debtors also mention "fraud upon the court" as cause to vacate the settlement agreement. However, after mentioning this phrase in the first paragraph of their motion, they do not return to it; the motion does not plead the alleged fraud with particularity. Nothing in the nature of fraud on the court was proven or argued at the evidentiary hearing.

For the above reasons, the Debtors have shown no duress or other cause to vacate, rescind, or otherwise grant them relief from the settlement agreement. Accordingly, the Court will enter a separate order denying the motion.

Date:  May 18, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge

8